BUCHALTER NEMER
  ROBERT E. IZMIRIAN (SBN: 53805)
  CRAIG C. CHIANG (SBN: 209602)
A Professional Corporation
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone: (415) 227-0900
Fax: (415) 227-0770
Email: rizmirian@buchalter.com; cchiang@buchalter.com

Attorneys for Chapter 11 Trustee
KYLE EVERETT

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| In re<br><br>PACIFIC THOMAS CORPORATION, dba PACIFIC THOMAS CAPITAL, dba SAFE STORAGE<br><br>Debtor. | Case No. 12-46534 MEH<br><br>Chapter 11 |
| KYLE EVERETT, Chapter 11 Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>RANDALL WHITNEY aka RANDALL C.M. WHITNEY aka RANDALL WORSLEY aka RANDALL C.M. WORSLEY, an individual; PACIFIC TRADING VENTURES dba SAFE STORAGE MANAGEMENT COMPANY, a California corporation; PACIFIC TRADING VENTURES, LTD. ("PTVL"), a Nevada corporation; and JILL V. WORSLEY aka V. JILL WORSLEY, an individual,<br><br>Defendants. | Adv. Proc. No. 13-04079<br><br>**DECLARATION OF KYLE EVERETT IN SUPPORT OF EMERGENCY MOTION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION** |

//

//

I, Kyle Everett, declare as follows:

1. On January 16, 2013, the Bankruptcy Court entered its Order Approving Appointment of Trustee, pursuant to which I became the duly appointed, qualified and acting Chapter 11 trustee (the "Trustee") of the bankruptcy estate of the Pacific Thomas Corporation dba Pacific Thomas Capital dba Safe Storage ("PTC").

2. I am informed and believe that PTC is the record owner of real property located at 2615 E. 12th Street, 2783 E. 12th Street, 2801 E. 12th Street, 1111 29th Avenue, 1113-15 29th Avenue, and adjacent parking lots, in Oakland, California (the "Premises"). The Premises generate revenue and include tenants Performance Contracting, Inc., Budget Truck Rental, Avila Trucking, Mujeres Unidas Activis, and other local contractor parking. The Premises also contain eleven buildings that are utilized as self-storage facilities (the "Safe Storage Facility").

3. Since my appointment as trustee on January 16, 2013, I have expended significant resources in attempting to obtain books, records, and accounts concerning the management and operation of the Premises, including the Safe Storage Facility. The books, records, and accounts that I have sought are documents that are basic to the preservation and administration of assets of PTC's bankruptcy estate, and to the determination of PTC's liabilities, from parties that were and are expected to maintain such documents. Importantly, neither Randall Whitney ("Whitney"), Chief Operating Officer and Chairman of the Board of PTC, nor Pacific Trading Ventures ("PTV") as the manager of the Safe Storage Facility, nor PTV's Chief Operating Officer, Jill V. Worsley ("Worsley"), have cooperated with my efforts to review and obtain books and records (including the detailed daily parking support) relating to the current and historical rents received in connection with the Safe Storage Facility, the commissions due by Budget Truck Rental, which I am informed and believe is owned by Worsley and required to pay a portion monthly to PTC, and local contractor parking. I am informed and believe that PTV may have significant funds coming into its possession each month, but not turned over PTC's estate.

4. I am informed and believe that Whitney, PTV and/or Worsley have withheld significant funds from PTC's estate by misrepresenting that PTC had leased the Safe Storage

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

Facilities to PTV. I am informed and believe that the assertion that a lease of the Safe Storage Facility to Pacific Trading Ventures exists is part of a scheme to siphon funds that properly belong to PTC's bankruptcy estate and are collateral of the secured lenders.

## DOCUMENTS REQUIRED

5. As of the date of this declaration, I still have yet to receive the complete books and records of PTC. The books and records that have been produced were produced in a disorganized manner. As of the date of this declaration, I am still missing, among other things:

 a. A detailed accounting of all funds received, or disbursed, by non-debtor entities, on behalf of PTC in connection with the Premises, including but not limited to the Safe Storage Facility, for each of the 12 months immediately prior to PTC's bankruptcy filing date of August 6, 2012 (the "Petition Date") and each of the months from the Petition Date through the present, including, but not limited to, access to all system and source data for all the funds received or disbursed in connection with the Safe Storage Facility.

 b. All books and records, including, but not limited to, all banking statements and cancelled checks, detailing all funds received, or disbursed, by non-debtor entities, on behalf of PTC in connection with the Premises, including but not limited to the Safe Storage Facility, for each of the 12 months immediately prior to the Petition Date and each of the months from the Petition Date through the present, including, but not limited to, access to all system and source data;

 c. A historical rent roll, for each of the 12 months immediately prior to the Petition Date and each of the months from the Petition Date through the present, for all properties owned by PTC, including tenant payment dates, check numbers, and payment amounts, the period for which the tenant payments were made, and the current tenant unpaid balances;

 d. A list of the location(s) where any remaining books and records of PTC can be found;

 e. A copy of all of PTC's QuickBooks files, wherever located;

 f. All of PTC's books and records, whether or not they reside on computers

3
DECLARATION OF KYLE EVERETT IN SUPPORT OF EMERGENCY MOTION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION
BN 13737798v2

Case: 13-04079   Doc# 4   Filed: 04/11/13   Entered: 04/11/13 18:35:07   Page 3 of 13

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

belonging to PTC;

  g. All monthly expense reconciliations between PTC and PTV;

  h. All business records of any dba of PTC, including, but not limited to, Safe Storage and Pacific Thomas Capital, or a statement under penalty of perjury that no business records of such dba exist;

  i. For each transfer that PTV has made to PTC since the Petition Date, (i) the PTV check number (or identification of wire transfer), (ii) the transfer date, (iii) the tenant(s) for which the transfer is made, (iv) the location of the property and number of spaces used if it is for parking; and

  j. All documents relating to all insurance policies covering some or all of the Premises.

 6. Whitney, PTV and Worsley have repeatedly failed and refused to provide me with access to the books, records, and accounts detailing the funds received, and disbursed, on behalf of PTC, solely to deprive PTC's estate of funds that it is entitled to receive, which are also the secured lenders collateral, and records needed for the continued administration and operation of PTC's estate. Based on a report provided as of January 29, 2013, I am informed and believe that the Safe Storage Facility had a capacity of approximately $152,000 of monthly rental income at standard rates and was generating approximately $114,000 of monthly rental income (with approximately 75% occupancy).

 7. Absent the books, records, and accounts detailing the funds received, and disbursed, on behalf of PTC, it is difficult to establish whether the funds that PTC was supposed to set aside in separate accounts opened to segregate the cash collateral of Bank of the West, Summit Bank, Private Mortgage Funding and Private Capital Investments contain balances that accurately reflect each secured party's cash collateral.

## TRUSTEE'S ATTEMPTS TO OBTAIN RECORDS

 8. Below summarizes my attempts to acquire the information and documents needed to preserve and administer assets of PTC's bankruptcy estate, as well as to determine PTC's

4

liabilities. My attempts to obtain these books and records have been met with consistent hurdles and roadblocks raised by Whitney and Worsley.

9. On January 23, 2013, I sent a letter to Whitney requesting: (a) a current rent roll and a historical rent roll, for the past 12 month period immediately prior to the Petition Date for all properties owned by PTC; (b) bank account statements and cancelled checks; (c) a list of the location(s) where the books and records of PTC can be found; and (d) a list of all personal property owned by PTC. I further instructed Whitney not to remove, alter, or destroy any business records of PTC. A true and correct copy of my January 23, 2013 letter is attached hereto as Exhibit A.

10. On January 28, 2013, I sent a letter to Whitney noting that Whitney had failed to provide a rent roll for the Safe Storage Facility, contact information for each tenant of the Premises, and a statement of arrears for each of the identified tenants. In addition, I informed Whitney of security protocols to ensure preservation of PTC's business records. A true and correct copy of my January 28, 2013 letter is attached hereto as Exhibit B. As of the date of this Declaration, I still have received no historical rent roll for the Safe Storage Facility from Whitney.

11. Whitney initially refused to provide me with a copy of PTC's QuickBooks file, asserting that he needed to see first whether Timothy Brophy had provided a copy to me. After I informed Whitney that I had requested the QuickBooks file in PTC's possession, Whitney provided a QuickBooks file on a flash drive that included activity after the Petition Date, although I requested all of the books and records of PTC. In addition, Whitney indicated that he had deleted all other versions that may have existed because he believed that they were not "correct" or "reconciled" and were not the "official" versions of PTC's books. Whitney further asserted that the only version of QuickBooks at PTC's Premises covered only the period after the Petition Date. Finally, Whitney claimed that the most current data for PTC resided on many different computers in Walnut Creek belonging to PTV and intermingled with data from multiple companies. Whitney would not allow me to take a copy of all data on these computers, but

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

instead offered to provide records that he interpreted to be PTC's data. Although my associate, Tyler Julian, was given access to review certain files under Whitney's login address on two computers, Mr. Julian could not access other user login addresses and the data accessible to those addresses. Whitney's confirmation that prior copies of PTC's QuickBooks were deleted leaves me uncertain whether all records have been retained. Attached hereto as <u>Exhibit C</u> are true and correct printouts of emails and true and correct copies of letters that I sent to Whitney on January 31, 2013 evidencing my attempt to obtain PTC's QuickBooks file and Whitney's failure to cooperate.

12. On February 6, 2013, in response to Whitney's assertion that he had "delivered a complete set of books and record," I noted to him that he had acknowledged that some of PTC's books and records resided on computers that he claims belong to PTV. Attached hereto as <u>Exhibit D</u> are true and correct printouts of emails sent between me and Whitney on February 6, 2013. In addition, on February 5, 2013, I reiterated to Whitney that his assertion that books and records of PTC resided on computers not belonging to PTC raised additional access issues. A true and correct copy of my February 5, 2013 letter is also attached hereto under <u>Exhibit D</u>.

13. On February 20, 2013, I notified Whitney that I had not received any of the monthly expense reconciliations between PTC and PTV, and reiterated my request to have access to all of PTC's books and records, wherever they resided. I further asked Whitney to identify the remaining books and records, and their location. Attached hereto as <u>Exhibit E</u> is a true and correct copy of the February 20, 2013 letter. As of the date of this Declaration, I have yet to receive the monthly expense reconciliations from November 2012 onward, and have received only the August, September, and October 2012 reconciliations from PTC's attorney's records. In addition, from my review of the monthly expense reconciliations from August 2012 through October 2012, a number of the payments that the estate is being asked to reimburse appear to be third party pre-petition claims of professionals. I am unaware of any order of this Court approving payments to professionals for claims incurred prior to the Petition Date.

14. I remain concerned that Whitney has failed to provide me with a rent roll for the

Safe Storage Facility. I have been denied books and records relating to the current and historical rents received in connection with the Safe Storage Facility.

15. I have reviewed certain orders entered in the action filed by Summit Bank against Pacific Thomas Corporation in the Superior Court of the State of California, County of Alameda (the "Superior Court"), designated as Action No. RG11-574626. On July 6, 2012, the Superior Court entered its Order re Summit Bank's Application for Order re Contempt against Pacific Thomas Corporation and Randall Whitney (the "Contempt Order"), a true and correct copy of which is attached hereto as Exhibit F. The Contempt Order states that PTC and Whitney are in violation of orders of the Superior Court ordering PTC to "turn over all property as required…." The Contempt Order further states, "The Court finds that Pacific Thomas and Whitney have violated the Court Orders of January 20, 2012 and March 2, 2012. Their violations of this Court's Orders were willful, without good cause or substantial justification."

16. It is extremely disconcerting that Whitney has failed to provide the books, records, and accounts detailing the funds received, and disbursed, on behalf of PTC in connection with the Safe Storage Facility. I am informed and believe that the Safe Storage Facility generates an estimated $114,000 each month. The lack of information deprives PTC's estate with funds that it is entitled to receive and records needed for the continued administration of PTC's estate. The alleged "lease" with PTV requires payments of $70,000 for that space. Despite this reduced amount (approximately $44,000 less than potential rents **per month** since the filing date) under the alleged "lease", based on the records provided to date, PTV is not current to PTC on the payments for the Safe Storage Facility and owes approximately $100,000.00 of back "rents" primarily related to the Safe Storage Facility.

17. Since my appointment as Trustee, I have also expended considerable efforts to obtain information from PTV, which, pursuant to a written Management Agreement (the "Management Agreement"), as amended on January 1, 2011, agreed to provide property management services for the Safe Storage Facility in exchange for a management fee of $2,000, or 6% of gross revenue, among other agreed-upon compensation.

7
DECLARATION OF KYLE EVERETT IN SUPPORT OF EMERGENCY MOTION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION
BN 13737798v2

Case: 13-04079    Doc# 4    Filed: 04/11/13    Entered: 04/11/13 18:35:07    Page 7 of 13

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

18. On February 5, 2013, I sent a letter to Worsley, requesting an accounting of all payments made to PTV and a detailed accounting of all funds received or paid out on behalf of PTC. Under the Management Agreement, PTV is obligated to make available, for inspection and audit, the books, records, and accounts, including those related to all receipts and disbursement, in connection with the management and operation of the Safe Storage Facility. The information that I requested is basic information that a manager is expected to have, including the name of the Safe Storage Facility tenant that made each payment, the amount and date of a payment, and the period for which the payment is made. PTV, as manager of the Safe Storage Facility, ought to be in a position to provide the check number, date, and amount, as well as the payee for disbursements **that they have made** on PTC's behalf. A true and correct copy of my February 5, 2013 letter to Worsley is attached hereto as Exhibit G. To date, I still do not have most of this.

19. On February 6, 2013, I received a fax from Worsley, stating that my demand was "upsetting" and that it provided "no details." In addition, Worsley left me a voice message on February 6, 2013 indicating that my request for information was "ridiculous." I replied to Worsley, noting that I had requested very basic information that PTV, as property manager, is expected to have readily available, including reports that it provided to PTC, the property owner. I also informed Worsley that I had specifically requested an accounting of all payments which were made by PTV, as well as an accounting of all funds received, or paid out, on behalf of PTC. I further reminded Worsley that PTC had provided no detail of the payments which were purportedly made by PTV or the payments made by PTV on behalf of PTC. To date, I have received only a printout of the non-parking tenant payments from PTV QuickBooks, which excludes any data from the storage facility. Worsley has not provided me with basic data concerning the receipts and disbursements in connection with the operation of the Safe Storage Facility. I also have not received this information in the books and records that Whitney has provided to date. True and correct copies of correspondence between me and Worsley on February 6, 2013 and February 7, 2013 are attached hereto as Exhibit H.

20. I am informed and believe that the Safe Storage Facility generates approximately

8

DECLARATION OF KYLE EVERETT IN SUPPORT OF EMERGENCY MOTION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

$114,000 in proceeds from storage tenants each month. According to PTC's books and records, since the Petition Date, in August 2012, to February 1, 2013, PTV has paid PTC $431,715.81. PTC's books and records show that PTV has been billed $574,615.75, leaving $142,899.94 owing to PTC. As of the date of this date of this filing, at least $95,190.35, relating almost entirely to the Safe Storage Facility, is owing from PTV to PTC's estate. In addition, PTC's books and records show a pre-petition note receivable balance of $735,418.73 and account receivable of $194,415.17. In a February 8, 2013 letter to Worsley, a true and correct copy of which is attached hereto as <u>Exhibit I</u>, I advised Worsley that PTC's books and records reflect these balances owing to PTC.

21. On February 20, 2013, I wrote again to Worsley, noting that she had yet to provide all tenant payment histories, including payment dates, check numbers, payment amounts and the period for which the payments were made. For the Safe Storage Facility, Worsley has not provided a current tenant status report showing the amounts that PTV has collected from the Safe Storage Facility tenants each month since the Petition Date. Prior to my appointment, many of the funds were transferred directly by PTV into PTC's individual lender collateral accounts as lump sum transfers that appear to cover multiple tenants and multiple periods, and lack any detail breakdown. For the most recent payments, the notations on the checks from PTV do not provide adequate information to allow me to confirm the underlying source for such payments. I have requested that PTV provide, for each transfer or payment that PTV has made to PTC since the Petition Date, (a) the PTV check number (of identification of wire transfer), (b) the transfer date, (c) the tenant(s) for which the transfer is made, (d) the location of the property and number of spaces used if it is for parking. I also previously requested the details of payments made by PTV on behalf of PTC, including the check number, check date, amount, and payee. Rather than provide any detailed information, PTV initially only provided a single monthly amount which purports to represent the total payments on behalf of PTC each month. Subsequently, I obtained the reconciliations for the months of August, September, and October 2012 and a handful of haphazard invoice copies from Whitney discussed below. A true and correct copy of my

9

DECLARATION OF KYLE EVERETT IN SUPPORT OF EMERGENCY MOTION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO
BN 13737798v2

February 20, 2013 letter to Worsley detailing PTV's failure to provide the required data is attached hereto as Exhibit J.

22. On March 4, 2013, in advance of a meeting with Worsley, I again noted in a letter to her that my requests for detailed information on tenant payments have been ignored. I am informed and believe that PTV may have significant funds coming into its possession each month, but not turned over PTC's estate. To date, Worsley has only provided summary information as to the funds that PTV has transferred to PTC by simply indicating whose collateral account the funds are being deposited into. For the Safe Storage Facility, Worsley has not provided current monthly reports, which the Management Agreement requires. I reminded Worsley that I also twice previously requested the details of all payments made by PTV on behalf of PTC, including the check number, check date, check amount, and payee. Other than the reconciliations for the months of August, September and October 2012, which were received from the files from PTC's counsel and not Defendants, I have received only a handful of invoices, many with only handwritten notations. These invoices were recently provided by Whitney in connection with my continuing requests. The summary provided by Worsley indicates that PTV has paid $36,818.67 of expenses on behalf of PTC through January 2013. The total of the invoices, which had to be manually summarized as opposed to PTV providing a QuickBooks printout, totaled $33,748.37 and was only through December 2012. The invoices included approximately $15,000 of payments which PTV had made for pre-Petition Date insurance payments and which included coverage for PTV's offices. Some of the invoices paid were professional payments on account of pre-Petition Date services. Approximately $7,500 of these expenses are items that I do not believe are obligations of PTC, and instead are expenses of the management company, including personal cell phones for management company personnel, office supplies and shuttle service for the parking. This is an example of the half-measure information that Defendants have provided intermittently. A true and correct copy of my March 4, 2013 letter to Worsley is attached hereto as Exhibit K.

23. On March 7, 2013, I met with Worsley. My March 4, 2013 letter to her included

10
DECLARATION OF KYLE EVERETT IN SUPPORT OF EMERGENCY MOTION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

Case: 13-04079   Doc# 4   Filed: 04/11/13   Entered: 04/11/13 18:35:07   Page 10 of 13

an agenda that summarized the documents/information that I had requested earlier, but still had not received from PTV: (a) tenant payment histories since the Petition Date, (b) Safe Storage Facility payment history since the Petition Date, (c) historical parking space rental information since the Petition Date, and (d) details of PTV payments made on behalf of PTC including copies of canceled checks and invoices. At our meeting, Worsley flatly refused to provide me with access to the books and records relating to the current and historical rents received or unpaid for the Safe Storage Facility. Worsley also informed me that someone at the management company on the premises of the Safe Storage Facility determined who had parked on the Premises that day and would be required to pay for such parking and that the daily logs were at the Premises. She informed us that her accountant would obtain those logs and provide us with the information to verify the historical parking payments. On March 28, I was at the storage facility and was informed by Randall Whitney that the process above was generally what has been done historically, but added that the information about who had parked on the premises that day was transmitted via e-mail to PTV each day. I am informed and believe that, at the time I met with Worsley, PTV actually had the data I was requesting. As of the date of this declaration, we still have not received that data. We have received, however, another spreadsheet which includes the monthly parking information but again no books of records or other supporting documentation to determine if these amounts are correct as were promised at the meeting. I did receive from Whitney a copy of the Budget Trust Rental checks received by PTV for the period through November 2012. The check copies are substantially higher than the summary provided by Worsley; we have no supporting information since November 2012.

24. Following my meeting with Worsley, I prepared a draft spreadsheet of the unpaid rents by secured lender as well as by tenant, based on the fiction that a lease between PTC and PTV for the Safe Storage Facility existed and is effective. The draft analysis includes all transactions that were billed and payments made, based on the information available to me from PTV. Based on the fiction that a lease existed and is effective, PTV must pay PTC's estate $131,872.73, based solely on Post-Petition activity. It is likely that PTV has withheld

11

DECLARATION OF KYLE EVERETT IN SUPPORT OF EMERGENCY MOTION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 13737798v2

Case: 13-04079   Doc# 4   Filed: 04/11/13   Entered: 04/11/13 18:35:07   Page 11 of 13

significantly more rents from PTC. A true and correct copy of my March 19, 2013 letter to Worsley, including the aforementioned spreadsheet, is attached hereto as Exhibit L.

25. I have also reviewed PTC's Schedule B [Dkt. #34], which identifies "Loans to Shareholders" of $206,290.00, a "Note receivable from Pacific Trading Ventures" of approximately $312,000, among other notes receivable. I require the books and records of PTC, including its dealings with PTV, to determine the current status of this account and other receivables.

26. The 2009, 2010, and 2011 income tax returns and QuickBooks for PTC show that the operations of the Safe Storage Facility have been included in PTC's sworn income tax statements, with (a) all storage tenant rents deposited into PTC's bank accounts; (b) all expenses of the Safe Storage Facility operations included in PTC's income tax returns, <u>including a management fee paid to PTV on account of the storage tenant rents</u>, and (c) the land, buildings, fixtures, computers and equipment associated with the Safe Storage Facility included in PTC's income tax returns.

27. Both Whitney and Worsley executed a Promissory Note dated <u>July 27, 2007</u>, a copy of which is attached to the Trustee Declaration as Exhibit M, in favor of Summit Bank, that states that, "<u>As of 7-16-07, Borrower [PTC] does not have tenants</u>." (Emphasis added).

28. At the January 7, 2013 hearing on the Court's Order to Appear and Show Cause why a Chapter 11 Trustee should not be appointed, Whitney acknowledged and authenticated his and Worsley's signatures to a lease dated <u>2008</u> between PTC and PTV that includes only 1500 square feet of the Morse Building located at 2783 East 12th Street and <u>does not include the Safe Storage Facility</u> (the "2008 Lease").

29. The 2008 Lease, which was authenticated by PTC, is entirely inconsistent with the 2005 Lease. The 2005 Lease states that it is for a term of five years and includes the lease of 1,500 square feet at the Morse Building.

I declare under penalty of perjury that the above statements are true and that if called as a witness I could and would testify to their truthfulness. This declaration is executed on the 11 day

12

DECLARATION OF KYLE EVERETT IN SUPPORT OF EMERGENCY MOTION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

of April 2013 in San Francisco, California.

                                               /s/ Kyle Everett
                                                      KYLE EVERETT
                                                       Chapter 11 Trustee

13

DECLARATION OF KYLE EVERETT IN SUPPORT OF EMERGENCY MOTION FOR ISSUANCE OF
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

BN 13737798v2

Case: 13-04079   Doc# 4   Filed: 04/11/13   Entered: 04/11/13 18:35:07   Page 13 of 13

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO